IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | )<br>)<br>)<br>) | Case No. 4:23CR3051 |
| v. | )<br>) | **APPEAL OF MAGISTRATE'S<br>DETENTION ORDER** |
| | ) | |
| JACK OLSON,<br>Defendant. | )<br>)<br>)<br>) | |

Jack Olson, by and through the undersigned, appeals the Magistrate Judge's detention Order of April 28, 2023. (Filing 38). Pursuant to NECrimR 46.2(c), this Court shall conduct a *de novo* review of an order of release or detention.

I.  PROCEDURAL HISTORY

On April 19, 2023 an Indictment was filed naming three defendants with 15 counts of fraud. Jack Olson was named in four counts: Counts 1) Wire Fraud Conspiracy; Count 3) Honest Service Fraud; Count 14) Wire Fraud; Count 15) Wire Fraud. On April 24, 2023, a joint initial appearance was held and the three defendants entered pleas of not guilty.

A two part detention hearing was held. On April 24, 2023, the Government introduced their evidence. The Government called Agent Michele Stevenson. (Filing 46, page 20). The Government set up a PowerPoint slide presentation to assist with the Agent's testimony. (Filing 46, page 20). The PowerPoint was not introduced into evidence, nor were the pages numbered. The Government skipped slides, so it as times difficult to match up the testimony with the PowerPoint. The PowerPoint would eventually become Exhibit 1.

It is unclear how the PowerPoint became Exhibit 1. (See Court Filings 44 - Motion to Correct Record; Filing 49 - Order denying Filing 44; and Filing 51 - Objection to Magistrate's Order). However, upon listening to the audio of the hearing from April 26, 2023, the Magistrate stated, that what she was planning on doing was using that as a Court Exhibit, "because there was a lot of reference to it in the Government's evidence, and I want to make sure the record is clear as to what I was looking at…. and that will be filed as an exhibit in this case." (Audio from April 26, 2023 morning session, at 2:30-3:15) Counsel did not object, nor did the Court ask the lawyers positions regarding Exhibit 1.

Regardless the PowerPoint is in evidence. Throughout the hearing the parties struggled with how Exhibit 1 was going to be treated as Exhibit 1 seems to be part demonstrative aid, part substantive evidence, part proffered evidence, and part unsubstantiated accusations.

On April 28, 2023, the Court granted the Government's motion to detain all defendants. (Filing 38, 39, 40).

II.     LEGAL AUTHORITY

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). To ensure that pretrial detention would continue to be an exception, Congress limited the categories of cases eligible for pretrial detention to those listed in 18 U.S.C. § 3142(f): crimes of violence, Class A felonies, drug-trafficking offenses, offenses that involve minor victims, firearms, destructive devices, or failing to register. Congress

2

excluded fraud offenses from that list.  In other words, Congress determined that defendants charged with fraud are not detainable and should be released.

Because Congress excluded fraud offenses from subsection 18 U.S.C. § 3142(f)(1), the only mechanism to hold a detention hearing in this case is found in 18 U.S.C. § 3142(f)(2). Under subsection (f)(2), the Court performs a threshold inquiry that asks two questions:

1)   Is there a "serious risk" that the defendant "will flee," i.e., intentionally "avoid court proceedings?"  or

2)   Is there a "serious risk" the defendant will obstruct justice, threaten witnesses, or threaten jurors?

The Court's first inquiry under the Bail Reform Act is whether a detention hearing is authorized on either of these grounds.  Through this threshold inquiry, the Bail Reform Act "performs a gate-keeping function by "limit[ing] the circumstances under which [pretrial] detention may be sought to the most serious of crimes."  *Salerno*, 481 U.S. at 755. Accordingly, the analysis under §3142(f)(2) isn't a perfunctory procedural stop on a path towards a detention hearing; rather, it's "a significant step in the criminal process"—one where the judicial officer "verifies" there is "sufficient information to show" that "(f)(2) applies to the defendant."  ).  Federal Judicial Center, Jefri Wood, The Bail Reform Act of 1984 – (4th Ed. 2022) at 18. (The Bail Reform Act of 1984, Federal Judicial Center 2022)

In order to clear the evidentiary threshold imposed by §3142(f)(2) the Government must present "concrete information", not "mere conclusory assertions." (See, *Unites States v. White*, 2021 WL 2155441 at 7 (M.D. Ten. May 27, 2021) (noting that, under (f)(2), courts look

3

for "concrete information proffered by the Government, and not mere conclusory assertions").

Dangerousness plays no role in the threshold inquiry under § 3142(f)(2). (The Bail Reform Act of 1984, Federal Judicial Center 2022 at 20-21 ("Danger to the community' or a general allegation of dangerousness, for example, which is a factor to be considered during a detention hearing, is not a factor under section 3142(f) that authorizes a detention hearing to be held in the first place."); see also *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003). "We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2). Our interpretation is in accord with our sister circuits who have ruled on this issue. See *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992); *United States v. Ploof,* 851 F.2d 7 (1st Cir. 1988); *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986)." *United States v. Twine*, 344 F.3d at 987.

This means that if the government is unable to adequately demonstrate that the defendant presents a serious risk of flight, obstruction, or threat to witnesses and jurors, then the defendant must be released. The inquiry must be performed independently of the Court's assessment as to whether release conditions can and should be fashioned. Meaning, even if the Court does not believe that the defendant will succeed in complying with release conditions, the Bail Reform Act may nevertheless compel release under (f)(2) based on the Government's inability to demonstrate a "serious risk that such person will flee" or "a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure,

or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 USCS § 3142(f)(2).

The latter part of 18 U.S.C. 3142(f)(2)(B) only applies when "a prospective witness or juror" is involved, not other individuals or the community." The Bail Reform Act of 1984, Federal Judicial Center 2022 at page 20. "Because subsection (f)(2) concerns a defendant's potential conduct and the risk must be "serious," an individualized assessment of the particular defendant is required. General claims that illegal immigration or wealthy fraud defendants, for example, present a risk of flight is not sufficient. Under section 3142(f)(2)(A) the government must present evidence that this defendant presents a serious risk to flee, to obstruct justice, or to "threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *Id.* at 20.

If the Government fails to meet their initial burden of serious risk of flight or serious risk of obstruction, a detention hearing is not authorized, and the Court must release the defendant on their personal recognizance or on such conditions as the Court determines are the least restrictive necessary to reasonably assure the appearance of the defendant and the safety of the community.

> Although some courts have detained defendants in circumstances other than those listed in section 3142(f), the circuits that have addressed the question directly held that defendants may not be detained "unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists." "Danger to the community" or a general allegation of dangerousness, for example, which is a factor to be considered during a detention hearing, is

5

not a factor under section 3142(f) that authorizes a detention hearing to be held in the first place. "The question whether the defendant poses a danger to the safety of the community under subsection 3142(e) cannot be considered unless the defendant is found to be eligible for detention under subsection 3142(f). A defendant who is not eligible must be released, notwithstanding alleged dangerousness.". The Bail Reform Act of 1984, Federal Judicial Center 2022 at page 20-21.

The article then cited the following cases: *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) (evidence of defendant's plans to kill some-one did not justify detention when charged offenses involved white-collar crimes not covered by section 3142(f)(1); but case remanded to see if the person whom defendant allegedly intended to harm was a "prospective witness" under section 3142(f)(2)(B)). Accord *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) (per curiam) (cannot order detention "based solely on a finding of dangerousness" unless at least one condition listed in § 3142(f)(1) & (2) is present); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Absent one of the[] circumstances [listed in § 3142(f)], detention is not an option."); *United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992) (detention order vacated because charged offense was not covered by section 3142(f)); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (per curiam) ("motion seeking [pretrial] detention is permitted only when the charge is for certain enumerated crimes, . . . or when there is a serious risk that the defendant will flee, or obstruct or attempt to obstruct justice"); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (defendant charged with

6

false identification could not be detained absent proof of serious risk of flight. The Bail Reform Act of 1984, Federal Judicial Center 2022 at page 20, FN 85.

If the Court finds that the Government has met their initial that if released Olson will be a "serious risk of flight or a serious risk he will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror, the Court then moves to the second step of the analysis and determines whether any condition or combination of conditions will reasonably assure the defendant's appearance as required. The Court must weigh the factors listed at 18 U.S.C. § 3142(g) while keeping in mind that "doubts regarding the propriety of release be resolved in favor of the defendant." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992). The principle that doubts be resolved in the defendant's favor is reflected in the burden of proof: there must be clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community, and there must be a "clear preponderance" of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance.

This is a two step analysis. The Government's evidence focused on factors that are considered in the second step of the analysis, namely weight of the evidence and attempts to portray Mr. Olson as a danger to the community. However, prior to evaluating risk of danger, the Government must prove by a preponderance of the evidence that Olson is a serious risk to flee, to obstruct justice, or to threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. The Government failed to meet their burden in step 1 of the analysis.

7

There was no evidence Olson presents a risk of flight. There was also no evidence offered that Olson was a risk to threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. The Government failed to prove their initial burden, therefore pursuant to 18 U.S.C. §3142, Olson should be released. If this Court wishes to place some pre-trial restrictions on Mr. Olson, counsel is not opposed to reasonable reporting and monitoring requirements. Mr. Olson has recently obtained a drug and alcohol evaluation, however that document is not yet prepared by the evaluator.

III.   FACTS

Most of the evidence the Government presented concerned "weight of the evidence" in relation to the fraud charges, which is relevant only if the Court gets to step two of the 18 USC §3142 analysis. In a nutshell, the Government claims Mr. Olson charged exorbitant fees to raise money and was not forthcoming about his share with donors. Mr. Olson pointed out on cross examination that he signed a contract with Latino Police Officers Association (LPOA), and that he did not lie to the donors. While the weight of the evidence analysis certainly depends on the eye of beholder, based on the information known at this time to this defense attorney, I will simply state that this is a triable case.

At the detention hearing the Government called Agent Michele Stevenson. (Filing 46, page 20). The Government set up a PowerPoint slide presentation to assist with the Agent's testimony. (Filing 46, page 20).

Regarding Jack Olson, Agent Stevenson claimed the Government would provide evidence that Olson possessed an unregistered firearm and suspected controlled substances at the time his home was searched; that Olson was being investigated for sexual assault;

that he purchased sex; and that he has friends in law enforcement that have assisted him. (Filing 43, page 22,23, See Ex. 1 at p. 7).  However, the Government did NOT provide evidence regarding an illegal or unregistered firearm, or controlled substances found at his home during the search warrant of December 2022.  Further, Agent Stevenson was unable to answer questions about those two claims as she was not involved in that part of the investigation.  (Filing 46, 8:20-10:22).

Stevenson testified about Olson's involvement in the alleged fraud from pages 35-42 of Filing 43.  There is further discussion about Olson's involvement in raising money for LPOA at filing 43, pages 51-53.  Agent Stevenson testified that Jack Olson was involved in a scheme to defraud the Latino Peace Officers Association. (Hereafter LPOA).  That Jack Olson used a different name when soliciting funds for LPOA. (Filing 43, page 35:3-11). Richard Gonzales, codefendant, brought Olson in to raise funds for LPOA.  (Filing 43, page 36).  Other Board members of LPOA were not aware Jack Olson was raising funds for LPOA or aware of his contract with them.  (Filing 43: page 37).

Stevenson claimed that Olson had been terminated as a fundraiser by other organizations for embezzlement and not representing things accurately.  (Filing 43, 36:8). Agent Stevenson was unable to elaborate on that claim, and did not answer which organizations claimed he was terminated for misappropriation of funds.  (Filing 46, 29:15-31:14).  Stevenson said their investigation revealed Olson had gambling problems and drug addiction in his life.  (Filing 43: 36:20-37:3).  The pre-trial report demonstrated that Olson suffered from opiate addiction from 2016-2018.  After his arrest in Iowa for controlled substances Olson completed two years of probation including the BAART program. (See

9

BAART PROGRAM). Olson has been clean from opiates and methadone since January 2019. (Pretrial Report, page 3). While Olson did have a medical marijuana license from Iowa, he stopped buying medical marijuana and was using "gummies" from shops in Nebraska to assist with sleep. However, he stopped doing this after the search warrant in December 2022. (Id.) This is likely the "suspected controlled substances" that the Government alleged in Exhibit 1, namely legal Cannabidiol /CBD. Stevenson testified that money raised by Olson was being spent gambling and at bars. (Filing 43: 38:22-39:1). This money spent gambling and at bars was the money Olson kept pursuant to the contract he signed with LPOA. (Filing 46: 4-16).

The Government provided evidence that some of the defendant's upon learning they were under investigation would meet and discuss the case and evidence. There was no evidence Jack Olson was involved in these meetings or discussions. (Filing 43:46-47).

The initial case came to the FBI in May of 2022. (April 26, 2023 morning audio at 6:00). Thus, Mr. Olson has been under scrutiny for over a year, however, the Government could not provide any evidence that would lead one to believe he would tamper with witnesses or evidence if released. The Government did not provide any specific concerns related to serious risk of obstruction or intimidating witnesses.

Regarding Exhibit 1, the pertinent pages related to Jack Olson are as follows:

Page 7 – this is a list of allegations that relates to the testimony of Stevenson at Ex 43: page 22-23. None of these allegations related to serious risk of flight or serious risk to obstruct justice, except arguably that last allegation that Olson has "friends in law enforcement that look out for him"

Page 46 -98    Fundraising for LPOA- these slides are about the fundraising arraignment LPOA had with Jack Olson, and the basis of the government's case for the wire fraud allegations. There is no evidence related to Jack Olson obstructing justice.

Pages 108 – 127 - The only evidence that could arguably be relevant regarding obstruction of justice was related to a sexual assault investigation.

IV.    ARGUMENT

FLIGHT RISK

Agent Stevenson testified during the months of surveillance of Mr. Olson that there was no evidence he was intending on fleeing. (Ex.46:26:17-20 &27:3-5). Olson was aware of this ongoing investigation however made no effort to abscond. (Ex.46:27:3-15).

OBSTRUCTION

Stevenson testified some of the defendants discussed the investigation of the fraud, advising persons what to say if interviewed. However, this did not involve Olson. There was no evidence that Jack Olson was involved in withholding LPOA documents or discussing the investigation with witnesses about LPOA fundraising. In fact, Olson met with the IRS and FBI about his fundraising. There was no evidence he lied to agents during these meetings.

In *United States. v. Madoff* the Court stated, "First, the court must determine whether the Government has established 'by a preponderance of the evidence that [Madoff] . . . presents a risk of flight or obstruction of justice.'" *United States v. Khashoggi*, 717 F. Supp. 1048, 1049 (S.D.N.Y. 1989) (quoting *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988)). If the Government carries this initial burden, the Court must determine whether

11

there are reasonable conditions of release that can be set or whether detention is appropriate. *Friedman,* 837 F.2d at 49; *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986), cert. dismissed, 479 U.S. 978, 107 S. Ct. 562, 93 L. Ed. 2d 568; 18 U.S.C. § 3142(e)." *United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y 2009).

The law says serious risk of obstruction. Even under a preponderance standard, the word serious must have some meaning. It must mean more than some unspecified fear, more than generalized unease.

"The question is not simply whether Madoff's actions can be considered obstruction, but whether there is a serious risk of obstruction in the future. The statute, by its nature, is always looking forward. To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward." *United States v. Madoff*, 586 F. Supp. 2d 240, 250.

The FBI took steps in insulate their investigation from officers friendly to the defendants. (Filing 46, page

- A. We made efforts to ensure that the investigation was in – was investigated in such a way that the Omaha police officers handled certain aspects of the investigation but did not handle others.
- Q. Okay. So you took steps to make sure the investigation wasn't compromised by anyone friendly with the officers – target officers? Is that fair?
- A. I would say we were looking to ensure that our task force officers did not have any more of a challenge in this investigation than they already faced.

12

Q. Okay. So if someone was friendly with some of the officers that are sitting next to me right now, I take it they weren't aware of this investigation?

A. We did everything we could to keep this investigation as close-hold as we could. (Filing 46, 4:3-17).

The evidence seized from Mr. Olson is locked up and secure at the FBI. (Filing 46, 6:16-7:6) so there is no threat Mr. Olson would be able to tamper with evidence obtained during this investigation.

There is no evidence Jack Olson asked anyone to obstruct an investigation. The evidence demonstrates that Mr. Olson had friends who were police. (Ex.46:24:1-5). The government offered no evidence that Olson solicited inside information from the police regarding the sexual assault allegation. (Ex.46:24:22-24). There was no evidence that Olson asked his police friends to speak with any witnesses. (Ex.46:24:19-21). There was no evidence on the wiretaps that Olson asked his friends to involve themselves in the sexual assault investigation. (Ex.46:25:19-26:8). At most the wiretaps reveal Olson's friends advising him to not speak with the police initially and to hire a lawyer. This is sound advice most friends would give whether they are in law enforcement or not. Asserting a Constitutional right is not obstruction, nor is advising a friend to assert their Constitutional rights obstruction. There was no evidence that Olson or anyone associated with Mr. Olson attempted to contact or intimate the victim or witnesses of the alleged sexual assault. (Filing 46, 27:16-28:1).

The Government had the opportunity to provide specific concerns of why Mr. Olson was a serious risk to obstruct their investigation or tamper with witnesses. If the

13

government was concerned about compromising ongoing investigations, they could have taken steps to seal the Courtroom, or ask for an in-camera or *ex parte* hearing to provide the Court with specific information. They chose not to do that.

The testimony demonstrated the FBI is in charge of this case, has secured the evidence and it would be remarkable that anyone, much less a private citizen such as Mr. Olson, be able to manipulate physical evidence. The primary evidence in this case is recordings from the wire. Further, what witnesses would Mr. Olson have an interest in attempting to manipulate? While I have not seen the evidence and am basing this from the PowerPoint and testimony, it sounds like Mr. Olson told IRS agents and FBI agents that he was taking the amount they now claim is fraud consistent with the contract he signed. Further, Mr. Olson was aware of this investigation for months, interviewed in August with IRS, had a search warrant on his house in December, and there is no indication that he attempted to manipulate witnesses during that time. A defendant likely to intimated or coax a witness would attempt to do so during the months prior to the indictment, not after.

To justify detention, the Government must provide concrete evidence that Mr. Olson presents a serious risk of obstruction if released, and not vague possibilities or fears.

In *Madoff* the government was concerned that Mr. Madoff had transferred assets to third parties to avoid civil penalties and forfeitures. However, the *Madoff* Court focused on not whether Mr. Madoff's actions could be considered obstruction, but whether there is a serious risk of obstruction in the future. The statute, by its nature, is always looking forward. *Madoff* at 250.

Without seeing the Government's brief, this attorney is confident that it will fail to point to any specific concern the prosecution has of Olson obstructing or intimidating witnesses, rather it will rely on vague possibilities and hypotheticals. The law requires concrete proof, not speculation.

### EVEN IF THE GOVERNMENT MET THEIR INITIAL BURDEN, RELEASE CONDITIONS EXIST

If the Court finds the Government cleared (f)(2)'s threshold inquiry, then the parties proceed to "step two" in §3142's framework, which is "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(g). "The phrase "reasonably assure" does not mean "guarantee," as guarantees would fly in the teeth of Congress's clear intent that only a limited number of defendants be subject to pretrial detention." *U.S. v. Hir*, 517 F.3d 1081, 1092 n.9 (9th Cir. 2008).

The Government "bears the burden of proving the defendant poses an uncontrollable risk of danger to the community by clear and convincing evidence, and/or an uncontrollable risk of nonappearance by a preponderance of the evidence." *U.S. v. Wright*, 2018 WL 3496642 at *2 (D. Utah July 20, 2018). When examining whether Mr. Olson's situation rises to the level of "uncontrollable," the Court considers several factors under §3142(g).

### 3142(g) FACTORS FAVOR RELEASE

The first factor looks to both the "nature" and "circumstances" of the "charged" offense: "the former refers to the generic offense while the latter encompasses the manner in which the defendant committed it." *United States v. Singleton*, 182 F.3d 7, 12, 337 U.S. App. D.C. 96 (D.C. Cir. 1999). *United States v. Munchel,* 991 F.3d 1273, 1286

15

"Case-specific facts are thus relevant at a detention hearing, *see* 3142(g), but not when considering the government's motion under § 3142(f)(1)(A) to hold such a hearing." *United States v. Singleton*, 182 F.3d 7, 11-12 (D.C. Cir 1999).

The generic offense is fraud. All federal crimes and federal penalties are serious. However, in the context of the Bail Reform Act, it was clearly not considered "serious" such that persons should be locked up pending trial on the charge. It is not one of the offenses in 18 U.S.C. 3142(g)(1) which Congress listed as serious crimes. None of the crimes charged carry a mandatory minimum penalty, none have a rebuttable presumption of detention, and none are Class A or B felonies. *See, United States v. Munchel,* 991 F.3d 1273, 1286 (Judge Katsas dissent).

The weight of the evidence supports release. I will not rehash the problems in the case, however, there are legitimate issues to be litigated in this matter that were apparent during the detention hearing.

As demonstrated by the Pretrial Report, the history and characteristics of Mr. Olson support release.

Mr. Olson is almost 67 years old. The case is currently set for a status conference on July 19, 2023 as the case was deemed unusual and complex, over this attorney's objection. The Government has requested additional time to meet their discovery deadline. Preparing for trial with a client incarcerated will be onerous and difficult as there are numerous recordings counsel will want to share with his client.

Olson's release will allow the defense to prepare for trial in a meaningful way. Pre-trial detention is one of the worst things the Government does to people. There certainly are

16

instances where the Court has no choice, however, this is not one of those. People are forced to sit in a jail cell and wait, with little activities, and get moved from jail to jail. It is doubtful, no matter what efforts this attorney or Mr. Olson make, he will have a trial in 2023. It is likely to take months if not over a year or two. Jack Olson is presumed innocent. His presence is needed to assist in preparing a defense. Mr. Olson is not a danger to the community.

V.      CONCLUSION & PROFFER OF ADDITIONAL FACT

The government has not met their burden and Mr. Olson as a matter of law should be released. The one additional fact that may be relevant to this Court is that our office arranged a substance abuse evaluation, which we are happy to provide proof of, however we do not have the actual evaluation at this time.

    Respectfully Submitted,

    Jack Olson, Defendant

    By:   /s/  Korey L Reiman

    Korey L. Reiman, #21773
    Assistant Federal Public Defender
    112 Federal Building
    Phone: (402) 221-7820
    Email: korey_reiman@fd.org