IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2024 MAY 21 PM 1: 22

OFFICE OF THE CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:23CR3051 |
| Plaintiff, | SUPERSEDING INDICTMENT |
| vs. | 18 U.S.C. § 1349 |
| | 18 U.S.C. § 1343 |
| JACK OLSON, a/k/a "Cody Jones", | 18 U.S.C. § 2 |
| Defendant. | 26 U.S.C. § 7201 |

The Grand Jury charges that:

## Count I – Wire Fraud Conspiracy

Introductory Allegations:

1.     At times material to Count I, JOHNNY PALERMO was a police officer with the Omaha Police Department ("OPD") and board member of the Latino Peace Officers Association ("LPOA").  LPOA is a professional organization designed to promote the advancement of Latino professionals within OPD and other law enforcement organizations.

2.     At times material to Count I, RICHARD GONZALEZ, a/k/a "Richie", a retired OPD police captain and the Executive Director of Police Athletics for Community Engagement ("PACE"), would falsely represent on LPOA tax returns and other documents that he was also a board member of LPOA, that is the Chaplain of LPOA when, in fact, he was not a board member and had no authority to act on behalf of the LPOA board.

3.     At times material to Count I, JACK OLSON, DEFENDANT herein, using the false identity "Cody Jones," was a self-employed fundraiser who solicited donors to the LPOA.

1

4.      At times material to Count I, GONZALEZ, without having board authority to do so, conducted financial transactions for LPOA and caused payments to himself, PALERMO, and DEFENDANT, along with others, without disclosing material payments to donors or the LPOA board.  PACE, the charity for which GONZALEZ worked at material times to Count I, administers and oversees athletic programs for disadvantaged youth.  LPOA is a separate entity with a separate governing board from PACE and is not involved in administering children's athletic programs.

5.      At times material to Count I, DEFENDANT, using the false identity "Cody Jones," with the knowledge and assistance of PALERMO and GONZALEZ, would solicit funds from individuals and entities in the District of Nebraska and elsewhere on behalf of LPOA. Donors were unaware that Cody Jones was in fact DEFENDANT, and that DEFENDANT was keeping approximately 65% to 80% or more of donations made to LPOA for himself. Donor letters JOHNNY PALERMO signed and authorized for LPOA falsely represented that "every penny" of the donations went to athletic programs to keep target youths out of gangs and to other LPOA causes.  The LPOA website similarly represented that 100% of donations went to athletic programs for children when in fact LPOA was not organizing and administering any athletic programs for children in Omaha at times material to Count I.

6.      At times material to Count I, there were LPOA board members who were not aware DEFENDANT had a contract to raise funds for LPOA. The contract was signed by JOHNNY PALERMO and facilitated by RICHARD GONZALEZ without these board members seeing or voting on the contracts.

7.      At times material to Count I, JOHNNY PALERMO and RICHARD GONZALEZ increased the percentage of donations DEFENDANT kept for himself from 65% of gross donations to 80% of gross donations without presenting the increase to the LPOA board for its consideration and approval.

2

8.      Between on or about January 1, 2016, and April 5, 2023, in the District of Nebraska and elsewhere, JOHNNY PALERMO, RICHARD GONZALEZ, DEFENDANT, and others known and unknown to the grand jury, did knowingly combine, conspire, confederate, and agree with each other to commit wire fraud, to wit, they agreed to knowingly devise a scheme and artifice to defraud LPOA and its donors, as to material matters and to obtain money and property from LPOA and its donors, by means of false and fraudulent pretenses, representations, promises, and omissions of material facts in violation of 18 U.S.C. § 1343.

<u>Manner and Means of the Conspiracy</u>

9.      DEFENDANT and others used the following manner and means to carry out the conspiracy and scheme to defraud:

10.     It was part of the conspiracy and scheme to defraud that DEFENDANT and others falsely represented that DEFENDANT was "Cody Jones," and that "every penny" of the money donated to LPOA by donor entities and individuals in the District of Nebraska and elsewhere went to athletic programs for underprivileged children residing in neighborhoods with substantial gang activity to help keep children from joining street gangs when they well knew that 65% to 80% of the money that DEFENDANT solicited through the false identity of "Cody Jones" went back to DEFENDANT, who spent that money on himself and his co-conspirators, and that LPOA did not, at times material to Count I, actually administer, operate, or oversee athletic programs for children in the City of Omaha and surrounding areas.

11.     It was part of the conspiracy and scheme to defraud that the DEFENDANT and others falsely represented at times material to Count I that DEFENDANT employed multiple individuals, such as drivers, and had significant overhead costs and operated a "call center," when, in fact, DEFENDANT primarily worked alone out of a residence in Council Bluffs, Iowa, until RICHARD GONZALEZ secured him a new rental location from a retired LPOA board member.

12.     It was part of the conspiracy and scheme to defraud that when donors, LPOA members, and others would confront RICHARD GONZALEZ about "Cody Jones," and the true identity of "Cody Jones," RICHARD GONZALEZ would vouch for DEFENDANT and "Cody Jones" in an effort to maintain DEFENDANT's ability to continue to solicit funds.

13.     It was part of the conspiracy and scheme to defraud that the DEFENDANT and others sent e-mails in the name of "Cody Jones," to donors with statements such as the following, "(Victim MK), Please remember that this is not just a big cop party, we do this to raise funds so that volunteer Omaha police officers can help at risk and disadvantaged local youth! any amount will be appreciated. Cody," when in fact, it was part of the conspiracy for DEFENDANT to spend more than $46,000 dollars of money donated to LPOA at a bar for the benefit of himself and his co-conspirators.

14.     It was part of the conspiracy and scheme to defraud that DEFENDANT and his co-conspirators did not disclose to the entire LPOA board that PALERMO and GONZALEZ were spending LPOA money on a trip for themselves and friends to Las Vegas, Nevada, and were spending LPOA money at restaurants and bars for their own personal benefit.  They further failed to disclose that their friends, family members, and associates' travel was paid for by LPOA, using money that was fraudulently raised by DEFENDANT.

15.     It was part of the conspiracy and scheme to defraud that DEFENDANT and his co-conspirators did not disclose to the LPOA board that PALERMO and GONZALEZ increased DEFENDANT's percentage cut of the donations received to LPOA from 65% to 80%.  Overall, DEFENDANT removed more than a half million dollars from contributions given to LPOA between on or about January 1, 2018, and December 31, 2022.

16.     It was part of the conspiracy and scheme to defraud that DEFENDANT and his co-conspirators did not disclose to the entire LPOA board that PALERMO authorized personal loans to DEFENDANT out of the charity funds.

17.     It was part of the conspiracy and scheme to defraud that GONZALEZ would loan DEFENDANT thousands of dollars on an approximately annual basis, with knowledge that the only money DEFENDANT earned was the money from the scheme to defraud LPOA and its donors and that the money from the scheme would be used to reimburse GONZALEZ for the loans.

18.     It was part of the conspiracy that GONZALEZ falsely represented on LPOA tax returns that DEFENDANT did not have custody of the LPOA donations as the solicitor for LPOA, however GONZALEZ would personally contact the Omaha Police Credit Union and authorize DEFENDANT to cash checks made out to LPOA and leave with LPOA funds without requiring DEFENDANT to first go through the LPOA bookkeeper and without disclosing this practice to the LPOA board, LPOA donors, or the federal government.

19.     It was part of the conspiracy that DEFENDANT would receive restaurant gift cards, such as Texas de Brazil gift cards, and other items of value from donors that DEFENDANT would offer to GONZALEZ and PALERMO without reporting those donations to the LPOA bookkeeper.

20.     It was part of the conspiracy and scheme to defraud that DEFENDANT and his co-conspirators, on or about the dates set forth below, did, through false representations and material omissions cause and solicit the following non-exhaustive list of victim donors to donate to LPOA through this scheme:

| Victim (location) | Donation Amount Totals and Date Ranges |
|---|---|
| Wal-Mart (Arkansas) | Approximate total of donations from March, 2019 to June, 2022: $67,000. |
| S&C Wholesale (Englewood Colorado) a/k/a "JBS" | Approximate total of donations from April, 2019 to August, 2022: $50,000. |

| Scheels (North Dakota) | Approximate total of donations from July, 2019 to February, 2022: $1,000. |
| Cargill Beef (Schulyer, NE) | Approximate total of donations from August, 2019 to April, 2022: $6,500. |
| Catholic Archbishop of Omaha | Approximate total of donations from July, 2019 to January, 2022: $11,500. |
| Ameriprise Financial Services, Inc. (Minneapolis, MN) | Approximate total of donations from March, 2019 to June, 2020: $5,500. |
| Midnite Dreams (Waverly, NE) | May 16, 2019: $750. |

21.     As part of the conspiracy and scheme to defraud described above, DEFENDANT

and his co-conspirators caused to be transmitted by means of wire communications, in interstate

commerce and utilizing facilities of interstate commerce, the signals and sounds described below:

| Wire | Date | Wire Communication |
| --- | --- | --- |
| Text Message from JACK OLSON ("JO") to RICHARD GONZALEZ("RG") | 12/8/2021 | "Rich, Please get me the account and routing number info from bank." |
| Phone call intercepted between a witness ("W1") known to the grand jury and JOHNNY PALERMO ("JP") | 9/9/22 | W1: Richie's so fucking dirty at times man… JP: check this out though, so you didn't know but, motherfucker been getting money off my name W1: Oh yeah JP: with Jack, and they use that all the time…I told Jack, quit calling my people man, every time you need some money… W1: Is Jack the dude that's always with [witness known to the grand jury] JP: huh, yeah JP: Bro let me tell you, between me and you, you can't tell nobody so don't even tell [witness known to the grand jury] he (Jack) raised in 6 months, he raised $125,000, right? W1: uh huh JP: But he keeps 80% of it W1: What now?.... JP: And he (Jack) broke, he hangs with Rich and all they do is spend money between you |

| | | |
|---|---|---|
| | | and me, at the bar on Keno, you know what I mean<br>W1: Yeah Rich, Rich getting all this money dog.  You know what I'm saying.<br>JP: Yep |
| Phone call intercepted between JOHNNY PALERMO ("JP") and RICHARD GONZALEZ ("RG") | 9/11/22 | RG – hey…your…. new nick name…it ain't going to be JP, it's going to be reverend J,… cuz he gets paid to be at church every Sunday…<br>RG - what time you done, you and ah looks, like me you and [a witness known to the grand jury] and Jack<br>JP - let's go…I'm putting a text out a couple people - I know some freaks- just to show up, you know what I'm saying, we'll get their drinks cuz LPOA is paying for it you know what I'm saying so...<br>RG - yeah that's what I was going to say if you got the cards<br>JP - naw but I got my card and I'll get a receipt later you know what I'm saying<br>RG - oh yeah get reimbursed, I don't know why he put it under PACE but that's fine |
| Phone call intercepted between JACK OLSON ("JO") and RICHARD GONZALEZ ("RG") | 10/7/22 | JO: Well I went and tested, I went and picked up ah some money from that massage parlor today over there next to Winners.<br>RG: Oh you called em?<br>JO: Oh no, I didn't call I just went in.<br>JO: No the money was going the other way this time.<br>RG: How was it?<br>JO: It was all that and a bag of chips.<br>RG: Oh you serious?<br>JO: Oh yeah.<br>RG: [W2] called it didn't he.<br>JO: Oh yeah it was a good one.<br>JO: (UI) [W2]walked out and get in the car and looked for a menu he walked out and said Oh Yeah 100 percent...yeah it was 110...169....yeah it was a good one. So anyway I just make sure everything you got was going to just do a little bragging real fast or a scouting report for you. (UI) Now I'm going to call (UI) some money. Hey we'll put you in that book for ah 100 free 60 minutes. |

| | | |
|---|---|---|
| | | RG: Oh Oh my lord.<br>RG: Did, hey, did you have to ask?<br>JO: Ahhh no. No she gave me options. And she pointed at her lip, her mouth too.<br>RG: No way.<br>JO: Yep, guess what option I took?<br>RG:…I'm telling you the devil has taken over<br>JO: You know, I'm the devil's fucking cousin<br>RG: You're the devil's scout<br>[W2]: Hey Rich, someone put on Facebook, if Omaha was a book, and the devil read it, he would cry |
| Text Message sent from JACK OLSON ("JO") to a potential LPOA donor | 10/11/2022 | "This Is Cody with Omaha Latino Peace Officers Association. Thank you for your support with everything LPOA does for at-risk and disadvantaged youth from here in the inner city…can we count on your support again for our Christmas Party for kids and our food basket giveaway? We call it Presents from the Police. You have helped us with it the past few years,<br>can we count on you for $500 again? Please let me know, Cody." |
| Phone call intercepted with RICHARD GONZALEZ ("RG"), JOHNNY PALERMO ("JP") and a witness known to the grand jury ("W2") | 10/17/22 | RG: Are we on speaker?<br>W2: Yeah, what's up?<br>RG: Tell Johnny he's got to start fucking vetting these people that we hang out with…<br>RG: Well…Jack never sold you out on being there…<br>JP: Rich, we gotta suspect that everyone is a fucking snitch… the only people we gotta protect is us now<br>RG: Hey, hey, I trust you and [witness known to the grand jury]. I trust nobody fucking else bro….But you're right Johnny, you got to treat it like everybody's a snitch…we gotta protect each other…we on an island…<br>JP: We are on an island by ourselves, everybody else lying, they jealous of us<br>RG: I've been through this with the FBI, with you, you know that. I mean fuck, your last investigation, we knew what was up, these motherfuckers trying to get us, we didn't do nothing. Didn't do nothing this time either. |

| | | |
|---|---|---|
| | | JP: Man, only thing they get us, if they ever get us, is fucking bitches and drinking and getting money, that's it.<br>RG: Yep, that's it bro…<br>W2: No hey, we just gotta see what Jack says you know, hey Rich, and one more thing, text "Cody Jones," on his work number and say call me on this phone, you know.<br>RG: Yeah, yeah.<br>W2: And put your other phone in the fucking washer or microwave<br>RG: No, yeah, fuck |
| Phone call intercepted between JOHNNY PALERMO ("JP") and Victim of the Scheme ("V") | 12/14/22 | JP - Hello?<br>V - Hi, is this Johnny Palermo?<br>JP - Yes<br>V - Hi this is [a victim known to the grand jury]…. I'm the donation manager<br>JP - Yeah, how you doin?<br>V - Yeah, I'm good. Well… for the last four years at least we've donated to the Latino Police Association...<br>JP - Right<br>V - And um recently I was contacted by the FBI … so … I need to get some answers…<br>JP - Okay<br>V - So one is Cody Jack. Um, I've been told I-that may not even be this man's name. He's the one that always contacts me<br>JP - Is it-is it Cody Jones?<br>V - Umm, could be Cody Jones<br>JP - So he-he-he's the one that you know came to us and said that he would solicit funds. …his name is Jack Olson. And he hasn't paid his taxes in I dunno like in five years…<br>V - Yeah, well that's what I heard…one of the things we really look at in organizations is, number one, our money goes to what we put it to…and I've been told that he's takin more than half of it as a cut and you-and the only a very small portion goes … to your guys' organization<br>JP - Right. And you know w-w-w-w-<br>V - Is that-is that true?<br>JP - Well, yeah, that's what they told me<br>JP - Yeah, well yeah. That-he takes a large cut of it and um (V - Mhm) …but the money goes |

9

| | | to good causes that stuff that we do in the community but his overhead is his overhead, you know? And I don't-you know-I think he has pai-paid drivers... <br> V - Well … I've been doin this for 13 years…(JP - Right) I-I-I guess I-I don't understand how y-how whoever-whoever hired him (JP - Mhm) didn't understand like how much of a cut he was taking… <br> JP – Right |
|---|---|---|

All in violation of Title 18, United States Code, Sections 1349 and 2.

COUNTS II-IV

22.     The allegations set out in Count I are hereby realleged as if set forth herein.

23.     From on or about January 1, 2018, to on or about December 20, 2022, JACK OLSON, DEFENDANT herein, devised and intended to devise, and participated in a scheme to defraud LPOA, its board members, and its donors, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises as detailed in Count I and realleged herein.

24.     On or about each of the dates set forth below, in the District of Nebraska and elsewhere, the DEFENDANT caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | On or about | Description |
|---|---|---|
| II | 1/26/2020 | Donor solicitation email to victim donor Overhead Door Company of Omaha from DEFENDANT using the name "Cody Jones." |
| III | 3/13/2020 | DEFENDANT through an electronic application caused Wal-Mart to make a payment of $2,000 from Bentonville, Arkansas to LPOA in Omaha, Nebraska and retained $1,600 of the donation for himself. |

10

| IV | 2/10/2022 | Donor solicitation email to victim donor Wal-Mart from DEFENDANT using the name "Cody Jones." |
|----|-----------|---|

All in violation of Title 18, United States Code, Section 1343.

## COUNT V

25.     During the calendar year 2018, JACK OLSON, DEFENDANT herein, using the false identity "Cody Jones," was a self-employed fundraiser who solicited donors to the LPOA.

26.     During the calendar year 2018, DEFENDANT was paid a percentage of the LPOA donations via cash withdrawal from LPOA's bank account and/or via cashier's check. By receiving payment in cash and cashing checks at LPOA's bank, DEFENDANT was able to affirmatively conceal the source of the cash deposited into his various bank accounts.

27.     During the calendar year 2018, DEFENDANT received taxable income in the sum of $46,574. Upon that 2018 taxable income, there was owing to the United States of America an income tax of $9,394.

28.     Well knowing the foregoing facts, and failing to make an income tax return on or before April 15, 2019, as required by law, to any proper officer of the Internal Revenue Service, and pay to the Internal Revenue Service the income tax due and owing, DEFENDANT, in the District of Nebraska and elsewhere, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the calendar year 2018 by taking affirmative acts of evasion at times material to this Superseding Indictment, which included, but is not limited to, the following:

a.  For the purpose of hiding income earned during 2018, DEFENDANT cashed negotiable instruments (cashier's checks and/or business checks) received as payment shortly after receipt, keeping much of all income earned outside the bank,

11

paying personal expenses with the cash kept outside the bank, failing to keep business records, and paying personal expenses from the business bank accounts.

b.  In an effort to hide and conceal his 2018 income from the IRS, DEFENDANT conducted business using extensive amounts of cash and avoided making records that would allow the IRS to ascertain his true tax liability.

c.  On March 7, 2018, DEFENDANT deposited or caused to be deposited $4,530 in LPOA donor checks and withdrew $3,170 from LPOA's account.  None of the withdrawn funds were deposited into known DEFENDANT accounts.

d.  On March 15, 2018, DEFENDANT deposited or caused to be deposited $3,800 in LPOA donor checks and withdrew $2,660 from LPOA's account.  None of the withdrawn funds were deposited into known DEFENDANT accounts.

e.  On March 23, 2018, DEFENDANT deposited or caused to be deposited $1,970 in LPOA donor checks and withdrew $1,182 from LPOA's account.  None of the withdrawn funds were deposited into known DEFENDANT accounts.

f.  On April 26, 2018, DEFENDANT deposited or caused to be deposited $2,350 in LPOA donor checks and withdrew $1,645 from LPOA's account.  None of the withdrawn funds were deposited into known DEFENDANT accounts.

g.  On June 1, 2018, DEFENDANT deposited or caused to be deposited $4,600 in LPOA donor checks and withdrew $3,220 from LPOA's account.  None of the withdrawn funds were deposited into known DEFENDANT accounts.

h.  In 2018, DEFENDANT made at least 42 withdrawals from LPOA accounts totaling $46,547.  Of that, no more than $295 was deposited into known DEFENDANT accounts in 2018.

      i.  In an effort to hide and conceal his 2018 income from the Internal Revenue Service, DEFENDANT caused LPOA to not issue a Form 1099 or Form W-2 to DEFENDANT in 2018, or at any other time, for the 2018 payments issued to DEFENDANT.

      j.  Despite being paid 65% to 80% of all donated funds to LPOA, DEFENDANT failed to file income tax returns for tax year 2018.

In violation of Title 26, United States Code, Section 7201.

## COUNT VI

29.    During the calendar year 2019, JACK OLSON, DEFENDANT herein, using the false identity "Cody Jones," was a self-employed fundraiser who solicited donors to the LPOA.

30.    During the calendar year 2019, DEFENDANT was paid a percentage of the LPOA donations via cash withdrawal from LPOA's bank account and/or via cashier's check. By receiving payment in cash and cashing checks at LPOA's bank, DEFENDANT was able to affirmatively conceal the source of the cash deposited into his various bank accounts.

31.    During the calendar year 2019, DEFENDANT received taxable income in the sum of $71,268.24. Upon that 2019 taxable income, there was owing to the United States of America an income tax of $15,698.

32.    Well knowing the foregoing facts, and failing to make an income tax return on or before April 15, 2020, as required by law, to any proper officer of the Internal Revenue Service, and pay to the Internal Revenue Service the income tax due and owing, DEFENDANT, in the District of Nebraska and elsewhere, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the calendar year 2019 by taking affirmative acts of evasion at times material to this Superseding Indictment, which included, but is not limited to, the following:

a.  For the purpose of hiding income earned during 2019, DEFENDANT cashed negotiable instruments (cashier's checks and/or business checks) received as payment shortly after receipt, keeping much of all income earned outside the bank, paying personal expenses with the cash kept outside the bank, failing to keep business records, and paying personal expenses from the business bank accounts.

b.  In an effort to hide and conceal his 2019 income from the IRS, DEFENDANT conducted business using extensive amounts of cash and avoided making records that would allow the IRS to ascertain his true tax liability.

c.  On January 8, 2019, DEFENDANT deposited or caused to be deposited $1,950 in LPOA donor checks and withdrew $1,365 from LPOA's account.  DEFENDANT deposited $1,103 in cash on that same day in his personal account at Cobalt Credit Union.

d.  On January 9, 2019, DEFENDANT deposited or caused to be deposited $1,500 in LPOA donor checks and withdrew $1,050 from LPOA's account.  DEFENDANT deposited $420 in cash on that same day in his personal account at Cobalt Credit Union.

e.  On January 23, 2019, DEFENDANT deposited or caused to be deposited $1,750 in LPOA donor checks and withdrew $1,225 from LPOA's account.  DEFENDANT deposited $420 in cash on that same day in his personal account at Cobalt Credit Union.

f.  On March 6, 2019, DEFENDANT deposited or caused to be deposited $3,850 in LPOA donor checks and withdrew $2,695 from LPOA's account.  DEFENDANT

deposited $2,120 in cash on that same day in his personal account at Cobalt Credit Union.

g.  On March 19, 2019, DEFENDANT deposited or caused to be deposited $2,700 in LPOA donor checks and withdrew $2,160 from LPOA's account. DEFENDANT deposited $1,500 in cash on that same day in his personal account at Cobalt Credit Union.

h.  On March 22, 2019, DEFENDANT deposited or caused to be deposited $3,300 in LPOA donor checks and withdrew $2,640 from LPOA's account. None of the withdrawn funds were deposited into known DEFENDANT accounts.

i.  In 2019, DEFENDANT made at least 73 withdrawals form LPOA accounts totaling $75,746.52. Of that, approximately $36,000 in cash was deposited into DEFENDANT's personal accounts at Cobalt Credit Union.

j.  In an effort to hide and conceal his 2019 income from the Internal Revenue Service, DEFENDANT caused LPOA to not issue a Form 1099 or Form W-2 to DEFENDANT in 2019, or at any other time, for the 2019 payments issued to DEFENDANT.

k.  Despite being paid 65% to 80% of all donated funds to LPOA, DEFENDANT failed to file income tax returns for tax year 2019.

In violation of Title 26, United States Code, Section 7201.

## COUNT VII

33.  During the calendar year 2020, JACK OLSON, DEFENDANT herein, using the false identity "Cody Jones," was a self-employed fundraiser who solicited donors to the LPOA.

34.     During the calendar year 2020, DEFENDANT was paid a percentage of the LPOA donations via cash withdrawal from LPOA's bank account and/or via cashier's check. By receiving payment in cash and cashing checks at LPOA's bank, DEFENDANT was able to affirmatively conceal the source of the cash deposited into his various bank accounts.

35.     During the calendar year 2020, DEFENDANT received taxable income in the sum of $123,231. Upon that 2020 taxable income, there was owing to the United States of America an income tax of $31,116.

36.     Well knowing the foregoing facts, and failing to make an income tax return on or before April 15, 2021, as required by law, to any proper officer of the Internal Revenue Service, and pay to the Internal Revenue Service the income tax due and owing, DEFENDANT, in the District of Nebraska and elsewhere, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the calendar year 2020 by taking affirmative acts of evasion at times material to this Superseding Indictment, which included, but is not limited to, the following:

   a. For the purpose of hiding income earned during 2020, DEFENDANT cashed negotiable instruments (cashier's checks and/or business checks) received as payment shortly after receipt, keeping much of all income earned outside the bank, paying personal expenses with the cash kept outside the bank, failing to keep business records, and paying personal expenses from the business bank accounts.

   b. In an effort to hide and conceal his 2020 income from the IRS, DEFENDANT conducted business using extensive amounts of cash and avoided making records that would allow the IRS to ascertain his true tax liability.

   c. On January 8, 2020, DEFENDANT deposited or caused to be deposited $5,000 and withdrew $4,000 as a cashier's check. DEFENDANT subsequently cashed

the cashier's check at LPOA's bank on that same day.  There are no cash deposits in known DEFENDANT accounts on that day.

d.  On January 13, 2020, DEFENDANT deposited or caused to be deposited $2,050 in LPOA donor checks and withdrew $1,640 from LPOA's account in the form of a cashier's check.  DEFENDANT cashed the cashier's check on that same day at LPOA's bank.  DEFENDANT deposited $1,100 in cash in his personal account at Cobalt Credit Union on that same day.

e.  On January 22, 2020, DEFENDANT deposited or caused to be deposited $1,750 in LPOA donor checks and withdrew $1,400 from LPOA's account in the form of a cashier's check.  DEFENDANT cashed the cashier's check on that same day at LPOA's bank.  DEFENDANT deposited $1,000 in cash in his personal account at Cobalt Credit Union on that same day.

f.  On January 24, 2020, DEFENDANT deposited or caused to be deposited $2,000 in LPOA donor checks and withdrew $1,600 from LPOA's account in the form of a cashier's check.  DEFENDANT cashed the cashier's check on that same day at LPOA's bank.  DEFENDANT deposited $600 in cash in his personal account at Cobalt Credit Union on the next day.

g.  On January 28, 2020, DEFENDANT deposited or caused to be deposited $2,750 in LPOA donor checks and withdrew $2,200 from LPOA's account in the form of a cashier's check.  DEFENDANT cashed the cashier's check on that same day at LPOA's bank.  DEFENDANT deposited $1,200 in cash in his personal account at Cobalt Credit Union on that same day.

   h. In 2020, DEFENDANT made at least 81 withdrawals from LPOA accounts totaling $127,274. Of that, approximately $30,700 was deposited into known DEFENDANT accounts.

   i. In an effort to hide and conceal his 2020 income from the Internal Revenue Service, DEFENDANT caused LPOA to not issue a Form 1099 or Form W-2 to DEFENDANT in 2020, or at any other time, for the 2020 payments issued to DEFENDANT.

   j. Despite being paid 65% to 80% of all donated funds to LPOA, DEFENDANT failed to file income tax returns for tax year 2020.

In violation of Title 26, United States Code, Section 7201.

<strong><u>COUNT VIII</u></strong>

  37. During the calendar year 2021, JACK OLSON, DEFENDANT herein, using the false identity "Cody Jones," was a self-employed fundraiser who solicited donors to the LPOA.

  38. During the calendar year 2021, DEFENDANT was paid a percentage of the LPOA donations via cash withdrawal from LPOA's bank account and/or via cashier's check. By receiving payment in cash and cashing checks at LPOA's bank, DEFENDANT was able to affirmatively conceal the source of the cash deposited into his various bank accounts.

  39. During the calendar year 2021, DEFENDANT received taxable income in the sum of $149,657. Upon that 2021 taxable income, there was owing to the United States of America an income tax of $39,497.

  40. Well knowing the foregoing facts, and failing to make an income tax return on or before April 15, 2022, as required by law, to any proper officer of the Internal Revenue Service, and pay to the Internal Revenue Service the income tax due and owing, DEFENDANT, in the District of Nebraska and elsewhere, did willfully attempt to evade and defeat the income tax due

18

and owing by him to the United States of America for the calendar year 2021 by taking affirmative acts of evasion at times material to this Superseding Indictment, which included, but is not limited to, the following:

a. For the purpose of hiding income earned during 2021, DEFENDANT cashed negotiable instruments (cashier's checks and/or business checks) received as payment shortly after receipt, keeping much of all income earned outside the bank, paying personal expenses with the cash kept outside the bank, failing to keep business records, and paying personal expenses from the business bank accounts.

b. In an effort to hide and conceal his 2021 income from the IRS, DEFENDANT conducted business using extensive amounts of cash and avoided making records that would allow the IRS to ascertain his true tax liability.

c. On January 6, 2021, DEFENDANT deposited or caused to be deposited $4,854 in LPOA donor checks and withdrew $3,883 from LPOA's account. DEFENDANT deposited $1,700 in cash into his personal account at FNBO and $1,000 in cash into his business account on that same day.

d. On January 12, 2021, DEFENDANT deposited or caused to be deposited $10,350 in LPOA donor checks and withdrew $8,280 from LPOA's account. DEFENDANT made no cash deposits into known accounts on that day. DEFENDANT did deposit $500 in cash into his business account on January 15, 2021, and $1,500 in cash into his personal account on January 14, 2021.

e. On March 1, 2021, DEFENDANT deposited or caused to be deposited $12,850 in LPOA donor checks and withdrew $10,280 from LPOA's account. DEFENDANT deposited $2,000 in cash into his personal account and $3,600 in cash into his business account on that same day.

19

f.  On March 31, 2021, DEFENDANT deposited or caused to be deposited $3,950 in LPOA donor checks and withdrew $3,160 from LPOA's account in the form of a cashier's check.  DEFENDANT cashed the cashier's check that same day at LPOA's bank.  DEFENDANT deposited $500 in cash into his personal account and $500 in cash into his business account on that same day.

g.  On November 3, 2021, DEFENDANT deposited or caused to be deposited $10,600 in LPOA donor checks and withdrew $8,868 in the form of an LPOA business check.  DEFENDANT cashed the business check that same day at LPOA's bank.  DEFENDANT deposited $1,000 in cash in his personal account and $2,500 in his business account on that same day.

h.  In 2021, DEFENDANT made at least 82 withdrawals totaling $173,323.  Of that, three checks totaling approximately $3,600 and $74,000 in cash was deposited into known DEFENDANT accounts.

i.  In an effort to hide and conceal his 2021 income from the Internal Revenue Service, DEFENDANT caused LPOA to not issue a Form 1099 or Form W-2 to DEFENDANT in 2021, or at any other time, for the 2021 payments issued to DEFENDANT.

j.  Despite being paid 65% to 80% of all donated funds to LPOA, DEFENDANT failed to file income tax returns for tax year 2021.

In violation of Title 26, United States Code, Section 7201.

A TRUE BILL.

FOREPERSON

20

        The United States of America requests that trial of this case be held in Lincoln, Nebraska, pursuant to the rules of this Court.

                                        DONALD J. KLEINE, #22669
                                        Assistant U.S. Attorney