IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>vs.<br><br>JACK OLSON,<br><br>           Defendant. | 4:23CR3051<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Susan T. Lehr, United States Attorney, and Donald J. Kleine, Assistant United States Attorney, and defendant, JACK OLSON, and Korey L. Reiman, counsel for defendant, as follows:

I

**THE PLEA**

A.    CHARGE(S) & FORFEITURE ALLEGATION(S).

Defendant agrees to plead guilty to Counts I and VIII of the Superseding Indictment. Count I charges a violation of Title 18, United States Code, Sections 1349 and 1343, conspiracy to commit wire fraud. Count VIII charges a violation of Title 26, United States Code, Section 7201, tax evasion.

B.    In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

      1.    The United States will move to dismiss the Indictment and Counts II-VII of the Superseding Indictment at the time of sentencing.

      2.    The United States agrees that the defendant will not be federally prosecuted in the District of Nebraska for any other criminal violations based on the conduct alleged in the factual basis set forth in section II of this agreement, or any other potential Internal Revenue Service criminal violations known to the government as of the date of the signing of this agreement other than as set forth in paragraph A, above.

1

## II
## NATURE OF THE OFFENSE

A.    ELEMENTS EXPLAINED.

Defendant understands that the offenses to which defendant is pleading guilty have the following elements:

### Count I

1. Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in Count I of the Superseding Indictment; and
2. The defendant knew the unlawful purpose of the plan and willfully joined in it.

### Count VIII

1. The defendant owed substantial income tax;
2. The defendant attempted to evade or defeat the payment of that tax by concealing his reportable income and assets; and
3. That defendant acted willfully.

B.    ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

1. At times material to Count I, JOHNNY PALERMO was a police officer with the Omaha Police Department ("OPD") and president of the Latino Peace Officers Association ("LPOA"). JACK OLSON was the fundraiser for LPOA. RICHARD GONZALEZ, a/k/a "Richie" was a member of the LPOA but was not a board member of LPOA.

2. Between on or about 2017 and April 2023, in the District of Nebraska and elsewhere, JOHNNY PALERMO, RICHARD GONZALEZ, and JACK OLSON willfully agreed, or had an understanding, to accomplish a common plan to defraud LPOA of money and property by means of false and fraudulent pretenses, representations, promises, and omissions of material facts, which included the use of interstate wire communications, in violation of 18 U.S.C. § 1343 (i.e. wire fraud).

2

3. It was part of the conspiracy and plan that RICHARD GONZALEZ, a/k/a "Richie", a retired OPD police captain and the Executive Director of Police Athletics for Community Engagement ("PACE"), without having full board authorized authority to do so, conducted financial transactions for the charity and caused payments to himself, JOHNNY PALERMO, and JACK OLSON, a/k/a "Cody Jones", along with others, without disclosing material payments to the LPOA board.

4. It was part of the conspiracy and plan that JACK OLSON, with the knowledge and assistance of JOHNNY PALERMO and RICHARD GONZALEZ, would solicit funds from individuals and entities in the District of Nebraska on behalf of LPOA. JACK OLSON would keep approximately 65% to 80% or more of donations made to LPOA for himself. The donor letters JOHNNY PALERMO signed and authorized for LPOA falsely represented that "every penny" of the donations went to athletic programs to keep target youths out of gangs and to other LPOA causes. The LPOA website similarly represented that 100% of donations went to athletic programs for children when in fact LPOA was not organizing and administering any athletic programs for children in Omaha at times material to Count I.

5. It was part of the conspiracy and plan that JOHNNY PALERMO increased the percentage of donations that JACK OLSON kept for himself from 65% of gross donations to 80% of gross donations without presenting the increase to the LPOA board for its consideration and approval. The contract was signed by JOHNNY PALERMO and facilitated by RICHARD GONZALEZ without certain board members seeing or voting on the contract.

6. It was part of the conspiracy and plan that JACK OLSON sent e-mails to donors with statements such as the following, "(Victim MK), Please remember that this is not just a big cop party, we do this to raise funds so that volunteer Omaha police officers can help at risk and disadvantaged local youth! any amount will be appreciated. Cody." when in fact, JACK OLSON kept a significant portion of the money donated to LPOA.

7. It was part of the conspiracy and plan that JACK OLSON would receive restaurant gift cards, such as Texas de Brazil gift cards, and other items of value from donors that JACK OLSON would offer to RICHARD GONZALEZ and JOHNNY PALERMO without reporting those donations to the LPOA bookkeeper.

3

8. In furtherance of the conspiracy and plan, JACK OLSON, RICHARD GONZALEZ and JOHNNY PALERMO caused to be transmitted by means of wire communications, in interstate commerce and utilizing facilities of interstate commerce, the signals and sounds described below:

| Wire | Date | Wire Communication |
|---|---|---|
| Text Message from JACK OLSON to RICHARD GONZALEZ | 12/8/2021 | "Rich, Please get me the account and routing number info from bank." |
| Text Message sent from JACK OLSON ("JO") to a potential LPOA donor | 10/11/2022 | "This Is Cody with Omaha Latino Peace Officers Association. Thank you for your support with everything LPOA does for at-risk and disadvantaged youth from here in the inner city…can we count on your support again for our Christmas Party for kids and our food basket giveaway? We call it Presents from the Police. You have helped us with it the past few years, can we count on you for $500 again? Please let me know, Cody." |
| Phone call intercepted between JOHNNY PALERMO ("JP") and Victim of the Scheme ("V") | 12/14/22 | JP - Hello?<br>V - Hi, is this Johnny Palermo?<br>JP - Yes<br>V - Hi this is [a victim known to the grand jury].... I'm the donation manager<br>JP - Yeah, how you doin?<br>V - Yeah, I'm good. Well… for the last four years at least we've donated to the Latino Police Association…<br>JP - Right<br>V - And um recently I was contacted by the FBI … so … I need to get some answers…<br>JP - Okay<br>V - So one is Cody Jack. Um, I've been told I-that may not even be this man's name. He's the one that always contacts me<br>JP - Is it-is it Cody Jones?<br>V - Umm, could be Cody Jones<br>JP - So he-he-he's the one that you know came to us and said that he would solicit funds. …his name is Jack |

4

|  |  | Olson. And he hasn't paid his taxes in I dunno in like in five years… <br> V - Yeah, well that's what I heard…one of the things we really look at in organizations is, number one, our money goes to what we put it to…and I've been told that he's takin more than half of it as a cut and you-and the only a very small portion goes … to your guys' organization <br> JP - Right. And you know w-w-w-w- <br> V - Is that-is that true? <br> JP - Well, yeah, that's what they told me <br> JP - Yeah, well yeah. That-he takes a large cut of it and um (V - Mhm) …but the money goes to good causes that stuff that we do in the community but his overhead is his overhead, you know? And I don't-you know-I think he has pai-paid drivers… <br> V - Well … I've been doin this for 13 years…(JP - Right) I-I-I guess I-I don't understand how y-how whoever-whoever hired him (JP - Mhm) didn't understand like how much of a cut he was taking… <br> JP – Right |
|---|---|---|

ADDITIONAL FACTS AS TO COUNT VIII:

1. JACK OLSON solicited donors to the Omaha Chapter of the police charity, Latino Peace Officers Association ("LPOA"), by claiming the donated funds would be used for athletic programs for underprivileged children residing in neighborhoods with substantial gang activity. JACK OLSON spent a significant amount of the funds on himself and others for personal expenses unrelated to business dealings.

2. Between 2018 and 2021, JACK OLSON was primarily paid via cash withdrawal from LPOA's bank account and/or via cashier's check. JACK OLSON deposited checks at the police credit union and received a percentage based on his contract with LPOA. By receiving payment in cash and cashing checks at LPOA's bank, JACK OLSON was able to affirmatively conceal the source of the cash deposited into his various bank accounts.

3. JACK OLSON effected the scheme by cashing negotiable instruments (cashier's checks and/or business checks) received as payment shortly after receipt, keeping

much of all income earned outside the bank, paying personal expenses with the cash kept outside the bank, failing to keep business records, and paying personal expenses from the business bank accounts.

4. Between 2018 and 2021, JACK OLSON conducted business using extensive amounts of cash and avoided making records that would allow the IRS to ascertain his true tax liability.

5. JACK OLSON admitted to investigators that he failed to file returns for tax years 2018 through 2021. He further admitted he had a filing requirement for those years and owed significant tax based on income earned as a self-employed fundraiser.

6. Despite being paid 65% to 80% of all donated funds to LPOA, JACK OLSON failed to file income tax returns for tax years 2018 through 2021, resulting in a federal tax loss of $95,705, as set forth below:

| INCOME AND TAX LOSS | | | | |
|---|---|---|---|---|
| | Tax Year | | | |
| | 2018 | 2019 | 2020 | 2021 |
| Schedule C (unreported net income) | $46,574 | $71,268 | $123,231 | $149,657 |
| Tax | $2,813 | $5,346 | $13,704 | $18,351 |
| Self-employment Tax | $6,581 | $10,352 | $17,412 | $21,146 |
| Tax Due and Owing | $9,394 | $15,438 | $31,182 | $39,461 |
| TOTAL FEDERAL TAX LOSS | $95,475 | | | |

### III

### PENALTIES

A.    COUNT 1. Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A maximum 20 years in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in

6

    revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.

   5. Possible ineligibility for certain Federal benefits.

B. COUNT VIII. Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A maximum 5 years in prison;
2. A maximum $100,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

## IV

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
## DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## V

## SENTENCING ISSUES

A. SENTENCING AGREEMENTS.

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree the defendant shall receive a sentence of not to exceed 42 months of imprisonment.

As to Count I, the parties agree for guideline purposes the loss amount (to include relevant conduct) is at least $81,333.76, but not greater than $173,383.76.

As to Count VIII, the parties agree for guideline purposes the tax loss amount (to include relevant conduct) is $95,475. The parties agree that the tax loss amount from Counts V, VI, and VII of the Superseding Indictment is relevant conduct in this matter and should be included in the total tax loss amount at time of sentencing.

The parties specifically agree restitution (as to this defendant) should be ordered as follows:

- Latino Peace Officers Association (LPOA) - $27,111.25
- Individual Donors (list to be provided to the Court) - an amount up to $30,883.33 to be determined by the Court at the time of sentencing.
- United States Department of the Treasury - $95,475

Defendant further agrees to the following regarding Restitution:

a. The amount of restitution ordered by the Court shall include all relevant conduct, including, but not limited to, all charged and uncharged criminal conduct alleged in the Indictment and Superseding Indictment, and not limited to the count(s) of conviction.

b. Defendant also shall pay the Special Assessment of $100 per count of conviction by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case.

c. Restitution and Assessment payments shall be made payable to the "U.S. District Court Clerk."

d. The parties agree that restitution amounts and amounts disbursed to any victims will be determined at sentencing by the District Court and that the defendant will abide by the District Court's order.

e. Court imposed monetary penalties are due immediately and subject to immediate enforcement by the United States. 18 U.S.C. § 3613.

f. Any Court ordered schedule for restitution payments is merely a minimum payment obligation, and does not limit the methods by which the United States may immediately enforce the judgment in full, including but not limited to enrollment in the Treasury Offset Program (TOP) (see 26 U.S.C. § 6402(d); 31 U.S.C. §3720A; 31 U.S.C. § 3716) and garnishment of available funds, wages, or assets (see 18 U.S.C. §§3613, 3664(m)).

g. If incarcerated, Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a payment schedule.

h. Defendant will provide all of defendant's financial information to the United States and the Probation Officer, and agrees, if requested, to participate in a pre-sentencing debtor exam. Defendant will fully and truthfully disclose all assets and property in which Defendant has any interest, or over which Defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party.

8

i. At the request of the U.S. Attorney's Office (USAO), Financial Litigation Program (FLP), Defendant will promptly execute and return a fully completed and executed Financial Disclosure statement under oath, a Tax Information Authorization Form 8821, and a Request for Transcript of Tax Return Form 4506-T. Defendant also agrees to provide the USAO FLP copies of financial information that Defendant submitted to the U.S. Probation Office.

j. Defendant authorizes the USAO FLP to obtain Credit Reports concerning Defendant to enable the USAO to evaluate Defendant's ability to satisfy any financial obligations and monetary penalties imposed as part of the sentence and will execute any Release for such information upon request.

k. Defendant understands that compliance with USAO requests for financial information will be taken into account when the United States makes a recommendation to the Court regarding Defendant's acceptance of responsibility at sentencing. Defendant's failure to timely and accurately complete and sign the financial statement and any update thereto, may, in addition to any other penalty or remedy, indicate a failure to accept responsibility.

l. Defendant's disclosure obligations are ongoing and are in force from the execution of this agreement until Defendant has satisfied restitution in full.

m. Defendant certifies that Defendant has not transferred assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Defendant promises that Defendant will make no such transfers in the future.

n. If the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which Defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of Defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, enforce the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, including enforcement of 100 percent of the value of any previously

9

undisclosed asset. Defendant agrees not to contest enforcement against of such asset or property. If the United States opts to be relieved of its obligations under this plea agreement, Defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

B. <u>ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553</u>.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

C. <u>"FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION</u>.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report and may be disclosed to the court for purposes of sentencing.

## VI

### <u>DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK</u>

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

    (a) As provided in Section I above, (if this is a conditional guilty plea); and

    (b) A claim of ineffective assistance of counsel.

    (c) A right to file a motion under Section 3582(c)(1)(A);

        1. the general right to file a compassionate release motion;

        2. the right to file a second or successive such motion; or

        3. the right to appeal the denial of a compassionate release.

(d) The parties have agreed the Court will make a factual determination as to restitution for individual donors up to $30,883.33. **(See Part V, paragraph A).** The parties agree that the Defendant may appeal this restitution finding specific to Individual Donors. The restitution for LPOA ($27,111.25) and U.S. Department of Treasury ($95,475) are not subject to this exclusion and may not be appealed.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII

## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

11

## VIII
### SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs the agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

SUSAN T. LEHR
United States Attorney

_8/8/2024_
Date

DONALD J. KLEINE
ASSISTANT U.S. ATTORNEY

_8/6/24_
Date

JACK OLSON
DEFENDANT

_8/6/24_
Date

KOREY L. REIMAN
COUNSEL FOR DEFENDANT

13